```
IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY,

        **Plaintiff,**

v.                       //    CIVIL ACTION NO. 1:15CV150
                                  (Judge Keeley)

**CATHY BRADY, personal
representative of the Estate
of Douglas Brady; CASSANDRA
TAYLOR, personal representative
of the Estate of Jody Taylor,
and RUTH ANN HUNT, personal
representative of the Estate
of Jody Hunt,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER GRANTING
## PLAINTIFF ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY'S
## MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]

Pending before the Court is the plaintiff's Motion for Summary Judgment (dkt. no. 21). For the reasons that follow, the Court **GRANTS** the motion.

### I. BACKGROUND

This declaratory action initiated by the plaintiff, Allstate Property and Casualty Insurance Company ("Allstate"), seeks a declaration that coverage under an automobile insurance liability policy was not triggered when one of the defendants, Jody Hunt ("Hunt"), shot and killed two individuals. This action is related to two wrongful death suits currently pending in the Circuit Court of Monongalia County, West Virginia.

**ALLSTATE v. BRADY, ET AL.**                                        **1:15CV150**

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

A.  Factual Background

As it must, the Court construes the facts in the light most favorable to the defendants as the non-movants. See Ussery v. Manfield, 786 F.3d 332, 333 (4th Cir. 2015).

On December 1, 2014, Hunt shot and killed Douglas Brady ("Brady") and Jody Taylor ("Taylor"), before committing suicide approximately twelve hours later (dkt. no. 22 at 1-2). Hunt drove to Brady's place of business, where the video surveillance system captured footage of him entering the buidling unobserved, shooting Brady in the head, and then leaving. Id. at 3. Hunt then drove to Taylor's house, where he allegedly shot Taylor from the cab of the moving truck (dkt. no. 27 at 3). Later, the Westover, West Virginia Police Department discovered the following Facebook post by Hunt:

> I'm deeply hurt by the events that lead up to this day! I did not chose [sic] to have the love of my life to go behind my back and sleep with several guys as she came home to lay her head on my shoulder to say goodnight.... My actions were not right nor were the actions of those who tried to tear me down and take from me. This was not a plan but a struggle to see that those who strives [sic] to hurt me received their fair pay of hurt like I received.

(dkt. no. 21-1 at 50).

Hunt used his 2011 Ford F-150 truck insured by Allstate Automobile Liability Policy No. 918 261 049 ("Allstate Policy") to drive himself to the locations where he shot Brady and Taylor (dkt.

2

**ALLSTATE v. BRADY, ET AL.**                                1:15CV150

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

no. 27 at 3). Issued to Hunt, the Allstate Policy (dkt. no. 21-1 at 11) "protects an insured person from liability for damages arising out of the ownership, maintenance or use, loading or unloading of an insured auto." Id. at 26 (emphasis omitted). It provides that "[Allstate] will defend an insured person sued as the result of a covered auto accident, even if the suit is groundless or false." Id. (emphasis omitted).

The Allstate Policy also contains an exclusions clause stating that Allstate

> will not pay for any damages an insured person is legally obligated to pay because of. . . bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person. This exclusion applies only to damages in excess of the minimum limits required by the financial responsibility law of West Virginia

(Dkt. No. 21-1 at 28)(emphasis omitted).

**B.  Procedural Background**

Both Cathy Brady, personal representative of the Estate of Douglas Brady, and Cassandra Taylor, personal representative of the Estate of Jody Taylor, have filed complaints in the Circuit Court of Monongalia County, West Virginia, alleging wrongful death caused by Hunt (dkt. no. 21-1 at 1-6). Allstate instituted this declaratory action to determine whether it provides coverage for the defendants' claims.

**ALLSTATE v. BRADY, ET AL.**                                    **1:15CV150**

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-

**ALLSTATE v. BRADY, ET AL.**                                    **1:15CV150**

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248-52.

### III. DISCUSSION

The Court, exercising diversity jurisdiction, must apply West Virginia substantive law in addressing these coverage issues. See McKinnon v. Lincoln Benefit Life Co., 162 Fed. Appx. 223 (4th Cir. 2006 (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**A.   Coverage**

Allstate contends that the shooting and killing of Brady and Taylor by Hunt were actions that did not "aris[e] out of the ownership, maintenance or use, loading or unloading" of the insured truck, did not arise out of a covered auto accident, and are thus not covered by the Allstate Policy (dkt. no. 22 at 2).

The phrase used in the Allstate Policy, "arising out of the ownership, maintenance or use," has been given a broad interpretation. Baber v. Fortner ex rel. Poe, 412 S.E.2d 814, 817 (W. Va. 1991). Nonetheless, its bounds are not limitless. In West Virginia, "[c]ourts have generally refused to interpret the phrase so as to provide liability insurance coverage for acts which involve intentional shootings." Id. (citing Nationwide Mut. Ins. Co. v. Brown, 779 F.2d 984, 988 (4th Cir. 1985)). Under West

**ALLSTATE v. BRADY, ET AL.**                                  **1:15CV150**

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

Virginia law, it is clear that "an intentional shooting which occurs from within the cab of a stationary pickup truck is not an act arising out of the ownership, maintenance, operation, or use of the vehicle." Syl. Pt. 1, Baber, 412 S.E.2d at 815.

For an occurrence to arise out of the use of an insured vehicle, there must be a causal relationship between the use of the automobile and the injuries caused. See Cleaver v. Big Arm Bar & Grill, Inc., 502 S.E.2d 438, 442 (W. Va. 1998). The connection between the two "must be more than incidental, fortuitous or but for." Baber, 412 S.E.2d at 818 (quoting Detroit Automobile Inter-Insurance Exchange v. Higginbotham, 290 N.W.2d 414, 419 (Mich. Ct. App. 1980)). In assault cases, courts have tended to find no causal connection between assault-caused injuries and the use of an insured motor vehicle. See Baber, 412 S.E.2d at 817-18 (citing Brown, 779 F.2d at 988).

In Baber, an insured was backing his truck out of his estranged wife's driveway when he became involved in an altercation involving his wife's boyfriend. As the boyfriend charged toward him, the insured fired his pistol from within the truck, injuring and ultimately killing the boyfriend. On those facts, the Supreme Court of Appeals of West Virginia held that the insurance policy did not cover the incident, stating that the shooting

**ALLSTATE v. BRADY, ET AL.**                                                         **1:15CV150**

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

> was not foreseeably identifiable with the normal use of the vehicle. The shooting did not occur because [the husband] drove the truck to visit his wife. The vehicle functioned merely as the situs of a shooting which could have easily occurred elsewhere, given the circumstances.

Id. at 819 (internal quotations omitted).

Here the defendants assert that merely because Hunt drove to the locations where he shot Brady and Taylor is sufficient to conclude that the shootings arose out of his use of the automobile. They further assert that the Taylor shooting arose out of the use of the auto because Hunt was driving the truck when he shot Taylor.

Based on the controlling case law in West Virginia, however, the deaths of Taylor and Brady did not arise out of Hunt's use of the insured automobile so as to trigger coverage under the Allstate Policy. There is not a sufficient causal connection between Hunt's driving the truck and his shooting of the victims. In the case of Brady, for example, Hunt was not in his vehicle when the shooting occurred. Because Hunt was not in the truck, and the shooting was not "reasonably related to the use of the vehicle," there is no causal connection between his use of the truck and Brady's fatal injuries. Syl. Pt. 2, Cleaver, 502 S.E.2d at 438.[1]

---

[1] As noted in Baber, a "but for" connection is not strong enough to establish that the shooting arose out of the use of the vehicle. Baber, 412 S.E.2d at 818. Thus, any "but for" argument presented by the defendants must fail.

**ALLSTATE v. BRADY, ET AL.** 1:15CV150

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

As to Taylor, tellingly, even though Hunt was in the truck when he shot Taylor, the shooting was "not foreseeably identifiable with the normal use of the vehicle." Baber, 412 S.E.2d at 819. As the United States Court of Appeals for the Fourth Circuit has explained:

> The mere fact that an actual nexus links the use of a vehicle to an accident does not mean that such use was "normal," or that the weak causal connection thereby created makes the injury "foreseeably identifiable" with the vehicle. So construed, nearly any physical object that has some remote connection to an ultimate injury could be "used" to effect the accident that caused the injury. Such an interpretation ignores the Baber court's insistence that the "use" of the car be "foreseeably identifiable with the normal use of the vehicle."

Watkins v. Cont'l Cas. Co., 991 F.2d 793 (Table), 1993 WL 127950, *2 (4th Cir. 1993).

Although the defendants emphasize the fact that the truck was allegedly in motion when Hunt shot Taylor, that fact bears little significance in light of the overarching rule enunciated in Baber that there is no more of a causal connection when a shot is fired from a moving truck than when a shot is fired from a stationary truck.[2] Hunt's shooting of Taylor is no more "foreseeably

---

[2]Indeed, it is not actually clear from the opinion in Baber whether the truck in question was actually moving. The court simply notes that the insured was in the process of "backing out of the driveway, and attempting to turn around and return home" when he was confronted by the victim. One can fairly question whether the car was slowly moving, whether it was in "drive" with insured's

**ALLSTATE v. BRADY, ET AL.**                              1:15CV150

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

identifiable with the normal use of a vehicle" merely because of the vehicle's movement. Watkins, 991 F.2d at 793. A moving vehicle does not create a causal connection making a shooting a reasonably foreseeable outcome of its movement. The reasoning in both Baber and Watkins leads to the same conclusion here — Hunt's actions did not trigger coverage under the Allstate Policy.

**B.   Exclusions Clause**

Because there is no coverage under the Allstate Policy, the exclusions clause is not operative. Even had coverage been triggered, however, the exclusions clause still would limit any coverage to the statutory minimums inasmuch as it is undisputed that the shootings were intentional.

The exclusions clause provides that the Allstate Policy will not cover "damages in excess of the minimum limits required by the financial responsibility law of West Virginia" resulting from such acts (dkt. no. 21-1 at 28). Coverage can only be denied under the exclusions clause "if the policyholder (1) committed an intentional

---

foot on the brake, or whether he had placed the vehicle in "park." As the circuit court that initially decided Baber noted, and the Supreme Court of Appeals of West Virginia agreed, "[i]n all probability, the killing of [the victim] would have occurred if [the shooter] had been on foot, or on a bicycle, moped, or small car." Baber, 412 S.E.2d at 816. Similarly, Hunt could have just as easily shot Taylor while walking down the street, or by utilizing some other mode of transportation.

**ALLSTATE v. BRADY, ET AL.**                                1:15CV150

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

act and (2) expected or intended the specific resulting damage." Syl. Pt. 7, Farmers and Mechanics Mut. Ins. Co. Of West Virginia v. Cook, 557 S.E.2d 801, 802 (W. Va. 2001)(emphasis omitted).

Although the defendants' underlying state court claims allege negligence, the intentional nature of the shootings is undisputed; the defendants reference how Hunt "hunt[ed] down" the victims (dkt. no. 27 at 3). Additionally, Hunt expressed his intentions and what motivated the shootings in his Facebook post (dkt. no. 21-1 at 50), describing his actions that day as "a struggle to see that those who strives [sic] to hurt me received their fair pay of hurt like I received." Id. This clearly indicates Hunt's intention to inflict the harm he caused when he shot Taylor and Brady. Thus, even if Hunt's actions had triggered coverage, because the shootings were intentional, the Allstate Policy's exclusions clause would not provide any coverage beyond the minimum limits.

## IV. CONCLUSION

For the reasons discussed, the Court concludes that there are no disputes of material fact and, under established West Virginia law, the shooting did not arise out of Hunt's use of the automobile. Consequently, the Allstate Policy does not provide coverage and Allstate is entitled to judgment as a matter of law.

**ALLSTATE v. BRADY, ET AL.**                                1:15CV150

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]**

The Court therefore **GRANTS** the plaintiff's motion for summary judgment (dkt. no. 21) and **DISMISSES** this case **WITH PREJUDICE**.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record and to enter a separate judgment order.

DATED: August 10, 2016.

                                /s/ Irene M. Keeley
                                IRENE M. KEELEY
                                UNITED STATES DISTRICT JUDGE